STATE of Iowa, Plaintiff,

v.

James P. KELLEY, Judge, Third
Judicial District, Defendant.

No. 83–928.

Supreme Court of Iowa.

Aug. 22, 1984.

Thomas J. Miller, Atty. Gen., and Marcia Mason, Asst. Atty. Gen., for plaintiff.

Thomas L. McCullough of McCullough Law Firm, P.C., Sac City, and John J. Greer of Greer, Nelson, Bertell, Montgomery, Berry & Bovee, Spencer, for defendant.

Considered by HARRIS, P.J., and McCORMICK, McGIVERIN, LARSON, and CARTER, JJ.

CARTER, Justice.

The State in an original certiorari action challenges an order of the defendant (hereinafter respondent or respondent judge) judge quashing a prosecuting attorney's investigative subpoena issued under Iowa Rule of Criminal Procedure 5(6). The underlying investigation relates to the practices of the McGuire Auction Company of Holstein, Iowa, with respect to sharing of estate auction commissions with attorneys representing the executor or administrator. The existence of such practices became public knowledge as a result of litigation of a probate matter in the Ida County District Court in November of 1981. The case presents issues of first impression involving the dimensions of the investigative subpoena power granted to "the prosecuting attorney" by rule 5(6).

James J. McGuire is the officer of the McGuire Auction Company alleged to have custody of its business records. The investigative subpoena duces tecum which precipitated the present litigation was issued on February 1, 1983 at the request of the Attorney General. In the application made to the court for such subpoena, the Attorney General stated, in part:

That the county attorney of Ida County has requested the office of the Attorney General to investigate a complaint ... said county attorney determining that he may be in a conflict of interest. ...

That an investigation into misappropriation of client's funds by estate attorneys in connection with sales of real estate in probate (714.2 Iowa Criminal Code) is currently being conducted. ...

That in order to carry out the investigation and to lay foundation for criminal charges it is necessary that this applicant examine James J. McGuire of McGuire Auction Company, Holstein, Iowa and records of the McGuire Auction Company, specifically the closing statements and bank records for the sale of any property under court order. ...

The subpoena duces tecum which issued in response to the foregoing application required James J. McGuire to appear before an assistant attorney general at the Ida County courthouse on February 9, 1983, with records of "the sale of any property under court order, including but not limited to property in probate, conservatorships or guardianships from December 1977, until the present date." The subpoena further advised that the materials sought should include "records of any payments to attorneys involved in the estate, conservatorship or guardianship." After receiving the subpoena duces tecum, McGuire, on February 10, 1983, moved to quash it. In the motion to quash, he asserted that the request of the Attorney General had not been made as part of a bona fide investigation of any criminal matter.

At the hearing on the motion to quash, the State presented documentary evidence from the Ida County probate litigation in *In the Matter of the Estate of Chas. Breune.* The most significant items were: (1) an affidavit filed in the probate matter by an attorney for the *Breune* estate concerning the remission of certain commissions to his law firm as a result of sales of real estate of the decedent pursuant to court order; and (2) transcribed testimony from the probate litigation in which Patrick Forristal, an employee of the McGuire Auction Company for twenty-five years, testi-

fied as to a long-standing company practice of dividing or splitting brokerage commissions with attorneys who had provided the sale business. Mr. Forristal's testimony identifies at least five attorneys who had been involved in this practice and indicated that "no others come to mind, but there certainly could be some more."

Following a hearing on the motion to quash, the respondent judge ruled as follows:

> The court does not find the evidence and testimony adduced in this matter demonstrate a possibility of the two crimes having been committed by anyone. It is not more likely than not that the crimes have been committed, thus probable or reasonable cause has not been shown to support the intrusion into the papers of the witness. The subpoena or search in this matter is thus unreasonable.
>
> The motion to quash is therefore sustained, and the court orders the subpoena in this matter quashed.

James J. McGuire's challenge to the investigative subpoena, the respondent judge's decision with respect to that challenge, and the State's arguments in this court seeking to overturn that decision present issues involving both the constitutional and statutory dimensions of Iowa Rule of Criminal Procedure 5(6).

I. *Fourth Amendment Limitations on Investigative Subpoena Power.*

Although the written motion to quash filed by James J. McGuire did not specifically designate by name claims determinable under the fourth amendment to the federal constitution, these issues were asserted at the hearing on the motion to quash. In quashing the subpoena, the respondent judge expressly invoked fourth amendment doctrine. He specifically noted the absence of "probable cause" as a basis for his ruling and, in addition, stated:

> There must be some articulation of both the activities and the possible criminal nature of those activities in order for the

investigation and the subpoena issued under that power of investigation to be something other than an unreasonable intrusion under the fourth amendment.

In the argument which it advances to overturn respondent's order, the State suggests that it constitutes legal error to equate the showing required for a subpoena under rule 5(6) with fourth amendment "probable cause" standards applied in search warrant cases. It notes in this regard that the Supreme Court in *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 195, 66 S.Ct. 494, 498, 90 L.Ed. 614, 622 (1946), held that where investigatory subpoenas are authorized by law probable cause to suspect the commission of a crime is not a requirement for the subpoena to issue.

■ While negating a probable cause requirement for the issuance of investigatory subpoenas by governmental agencies which are granted subpoena power by statute, the Court set forth three criteria which must be met to satisfy fourth amendment doctrine. These are: (1) the investigation must be for a lawfully authorized purpose although no specific crime need be charged;[1] (2) the documents sought must be relevant to the inquiry; and (3) the items to be produced must be described in a manner permitting the object of the subpoena to properly respond with reasonable effort. *Oklahoma Press*, 327 U.S. at 209, 66 S.Ct. at 505–06, 90 L.Ed. at 629–30. The *Oklahoma Press* case involved the use of an investigative subpoena by an administrative agency. We recognized the analogy presented in the use of investigative subpoenas by grand juries in *Iowa Civil Rights Commission v. City of Des Moines*, 313 N.W.2d 491, 495 (Iowa 1981).

Because the State's contention that probable cause is not required for the issuance of a prosecutor's investigative subpoena is not controverted, there is no issue to be decided on that point. Instead, respon-

---

1. It seems well-established that investigatory subpoenas may lawfully issue in situations where no violation of criminal law is involved.

*Chidester v. Needles*, 353 N.W.2d 849 (Iowa 1984). *Iowa Civil Rights Commission v. City of Des Moines*, 313 N.W.2d 491, 495 (Iowa 1981).

dent's primary constitutional position in support of quashing the subpoena is that a bona fide criminal investigation is not involved in the present controversy. For this reason, it is urged that there is no lawfully authorized purpose for issuance of a subpoena under rule 5(6).

We agree with respondent's contention that a bona fide criminal investigation is a condition precedent for a prosecutor's investigatory subpoena under rule 5(6). Consequently, if there is no bona fide criminal investigation in progress, the issuance of a subpoena would offend not only the foundational requirement of rule 5(6) but also the requirement of "lawfully authorized purpose" established in *Oklahoma Press*. We are satisfied, however, that, as a result of the showing which has been made by the State, the existence of a bona fide criminal investigation must be presumed.

In *State v. Hamilton*, 309 N.W.2d 471, 478 (Iowa 1981), we analogized the investigatory power of a prosecutor under rule 5(6) with that of a grand jury. Cases dealing with the legitimacy of grand jury inquiries strongly suggest that the State, in seeking to subpoena documents, is only required to show that the documents could be relevant to some legitimate criminal investigation. Once this is made to appear, a prima facie showing of relevance and legitimacy is created which is ordinarily irrebuttable. *In re Grand Jury Subpoenas*, 391 F.Supp. 991, 995–97 (D.R.I.1975); *see also United States v. Dionisio*, 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67, 75 (1972); *Schwimmer v. United States*, 232 F.2d 855, 862 (8th Cir.), *cert. denied*, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956).

It is the theory of the State that if an attorney for an estate recovers a commission for the sale of estate property and does not apply it to the benefit of the estate or its beneficiaries this could be a violation of the criminal provisions of Iowa Code section 714.1(2). The State further urges that, if that attorney receives such a commission and does not disclose that fact to the probate court in connection with the attorney's claim for compensation, this could be a criminal violation of Iowa Code section 714.8(3). Both of these potential criminal violations were urged in the hearing before respondent on the motion to quash.

In his written ruling quashing the subpoena, respondent concluded that "the court does not find the evidence and testimony adduced in this matter demonstrate a possibility of the two crimes having been committed by anyone." We do not pass hypothetically on the applicability of the cited criminal code sections to unknown facts. We go no further than to conclude that a sufficient potential for criminal activity has been demonstrated within the area of the State's inquiry to justify the issuance of a prosecutor's investigative subpoena duces tecum. In *In re Grand Jury Investigation*, 381 F.Supp. 1295, 1299 (E.D.Pa.1974), the court stated that "a grand jury 'does not depend on a case or controversy to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" We believe these conclusions are equally applicable to the issuance of a prosecutor's subpoena in the present case under the authority of rule 5(6). The documents sought are adequately described and are clearly relevant to the investigation being undertaken. The legitimacy of that investigation as a criminal proceeding must at this stage of the case be presumed.

II. *Requirements for Investigatory Subpoena under Rule 5(6).*

To the extent that respondent's arguments for quashing the subpoena duces tecum are based on some limitations inhering in rule 5(6) rather than fourth amendment limitations, this does not alter the result which we reach. As we concluded in the preceding division, a bona fide criminal investigation is a requirement for issuance of an investigatory subpoena under rule 5(6). We believe, however, that the only showing required to indicate that a criminal investigation is in progress is some recitation by the county attorney or Attorney General outlining the generic nature of the

subject matter sought to be investigated. In addition, because we are bound to give constitutional application to our rules of criminal procedure, we hold that it is also a requirement of rule 5(6) that the documents sought be relevant to the inquiry and be described in a manner permitting the object of the subpoena to properly respond. The showing made by the State in the present case satisfies all of these requirements.

In so holding, we necessarily reject respondent's contention that an order quashing an investigative subpoena may only be reviewed on an "abuse of discretion" standard. The authorities relied upon by respondent in support of this contention relate to the scope of an investigatory subpoena rather than the basic issue of entitlement which is presented in the present case. No effective challenge to the scope of the present subpoena has been presented by respondent. The five-year time period is not unreasonable. Even if the investigation may reach back into transactions in which a statute of limitations defense might be presented, such transactions may nevertheless be relevant to issues in other cases which are not subject to a statute of limitations defense.

As a final point, we find no merit in respondent's claim that the investigative powers conferred by rule 5(6) should be analogized to those powers conferred upon the Attorney General by Iowa Code section 553.10 and limited accordingly. The statute referred to is part of the Iowa Competition Law. It empowers the district courts to enforce the Attorney General's requests for production of documents in investigations under that chapter. Such enforcement requires a showing of "reasonable cause to believe" that the chapter has been violated.

Apart from the fact that the provisions of section 553.10 are only made applicable to investigations under chapter 553, there are other reasons for distinguishing the requirements of section 553.10 from those which apply to subpoenas under rule 5(6). The most significant distinction is that chapter 553 proceedings are targeted at particular individuals or firms who for reasons brought to the Attorney General's attention are suspected of a violation of the Iowa Competition Law. These individuals or firms have already been made aware of the investigation and asked to voluntarily produce the requested documents. In sharp contrast, the thrust of a rule 5(6) investigation begins at a much earlier stage than a request to the court for enforcement of production under section 553.-10. As a consequence, it is far less likely in a typical criminal investigation that the investigatory authorities will have reasonable cause to believe that a particular law has been violated at the time when application is made for a subpoena under the rule. We are aware that the legislature has recently indicated its sensitivity to the thrust of an investigative subpoena in a particular area. *See* 1984 Iowa Legis. Serv. No. 2, at 20 (West). It has not, however, seen fit to provide a *requirement of showing* reasonable cause to believe that a crime has been committed in the general application of rule 5(6).

We have considered all contentions urged by the parties to the present certiorari action and conclude that the writ must be sustained and that the respondent's order quashing the subpoena duces tecum must be annulled.

WRIT SUSTAINED.